## *In re* ROESSLER & HASSLACHER CHEMICAL CO.

## *In re* W. J. MATHESON & CO., Limited.

(*Circuit Court, S. D. New York.* November 25, 1891.)

1. CUSTOMS DUTIES—CLASSIFICATION—PREPARATIONS OF COAL-TAR.
   Where the determining characteristic of a product is something which it has derived from coal-tar the same is dutiable at 20 per cent. *ad valorem* as a "preparation of coal-tar," under the tariff act of March 3, 1883, (Tariff Ind., New, par. 83,) instead of, as a "chemical compound," under paragraph 92, notwithstanding that some of the constituents of coal-tar have been eliminated and other materials added.

2. SAME.
   Under this rule, "naphthionate of soda" and toluidine base are dutiable as "preparations of coal-tar."

Appeals from Decision of the Board of United States Appraisers. Reversed.

The report of the district attorney to the secretary of the treasury in the *Roessler & Hasslacher Chemical Company Case* is as follows:

"The proceeding was an appeal by the importers from a decision of the board of U. S. appraisers at this port, affirming the decision of the collector upon the classification of certain merchandise imported into this district by said importers in the S. S. Nederland, August 25, 1890, which was classified by the collector as 'chemical salt,' and assessed for duty at the rate of 25 per cent. *ad valorem*, under the provisions of Tariff Ind. (New,) 92, of the act of March 3, 1883. Against this classification the importers protested, claiming that the merchandise was a *preparation of coal-tar*,' dutiable only at 20 per cent. *ad valorem*, under paragraph 83, Tariff Ind. (New,) act of March 3, 1883. * * * It was proved by the importers that the merchandise consisted of 'naphthionate of soda,' and that it was at present known, and was known in March, 1883, in the trade and commerce of this country, as a preparation of coal-tar. The importers also called as a witness a chemist in the laboratory of the appraisers' department in this city, and proved by his testimony that the product in question was a combination of naphthionic acid with soda, and that naphthionic acid was derived from naphthaline, which was a product of coal-tar, the proportion derived from coal-tar being about 87 per cent., and the soda about 13 per cent.; that it was in fact a preparation of coal-tar, applicable to the commercial use of making so-called 'coal-tar colors,' but was itself not a color or dye; that there was no one product that embraced and included all the substances found in crude coal-tar."

The report of the district attorney to the secretary of the treasury in the *Matheson Case* is as follows:

"The proceeding was an appeal from the decision of the board of U. S. appraisers for this port, affirming the decision of the collector of this port on the classification of certain merchandise entered at the port of New York by the above-named importers per Bohemia, June 25, 1890, which merchandise was classified by the collector as a 'chemical compound,' and duty assessed thereon at the rate of 25 per cent. *ad valorem*, under Tariff Ind. (New,) 92, tariff of March 3, 1883. Against this classification the importers duly protested, claiming that the merchandise was a preparation of coal-tar, dutiable at 20 per cent. *ad valorem*, under Schedule A, tariff act of March 3, 1883, (Tariff Ind., New, par. 83.) * * * No evidence was taken before the board of general appraisers, and, after the proceedings were transferred to the circuit court, the importers procured an order from the court for the taking of testimony herein before one of the U. S. general appraisers as an officer of the court. On such reference the importers proved that the merchandise in question was known as 'toluidine base,' was a derivative of coal-tar, and was commercially known to the trade and commerce in this country in March, 1883, as a preparation of coal-tar. They also proved by the testimony of a chemist from the U. S. laboratory in the appraisers' department in this city that the so-called 'toluidine base' was made from toluole, which exists in coal-tar, and is first isolated by the process of distillation; that the toluole is transferred to nitro-toluole by the action of nitric acid; that the nitro-toluole, by treatment with caustic soda and zinc dust, becomes transformed to azo-toluene, which body becomes converted into hydrazo-toluene, from which the base is precipitated from the solution; that more than 80 per cent. of the toluidine base is derived from coal-tar, and that the commercial source of toluole, from which toluidine base is made, is coal-tar; that toluidine base itself was not a color or dye; that there was no one product that embraced and included all the substances found in crude coal-tar."

*Comstock & Brown*, for importers.
*Edward Mitchell*, U. S. Atty.

LACOMBE, Circuit Judge.  The question as to such a compound as this being improperly described as a product of coal-tar because some of the constituents of coal-tar have disappeared, is, I think, sufficiently answered by the testimony, which shows that from pitch, which is expressly enumerated as one of the coal-tar products, several of its constituents have been eliminated.  I do not think it was the intention of congress to restrict these paragraphs to products or preparations in which the entire constituents of coal-tar still remained, simply changed in some way or other by manufacture.  Nor is it particularly material that other substances have been added, if the determining characteristic of the product or preparation is something which it has received from coal-tar, and this the testimony shows.  For these reasons the decision of the board of appraisers is reversed.  The articles should be classified under paragraph 83, as preparations of coal-tar, (not colors or dyes,) and not under the extremely broad designation of the other paragraph as "chemical compounds."